(47 Misc. Rep. 60.)

## PEOPLE v. JACKSON.

(Court of General Sessions, New York County. April, 1905.)

1. BRIBERY—NATURE OF OFFENSE.
    The asking of money by a public officer to influence his action, which is not official, and which he has no authority at law to perform, is not bribery.

2. CORONERS—INQUESTS—JURISDICTION.
    In order that a coroner may investigate the causes of sudden death in a judicial capacity, he must, under Code Cr. Proc. pt. 6, tit. 1; §§ 773, 775, 777, go to the place where the dead person lies, which place must be within the limits of the territory where he can exercise his authority.

3. SAME—JURISDICTIONAL FACTS—ALLEGATIONS AND PROOF.
    A coroner being an officer of inferior and limited jurisdiction, every fact necessary to give him jurisdiction must be alleged and proved.

4. SAME—WANT OF JURISDICTION—EFFECT.
    Where a coroner acts on a cause of death without the presence of the body within his jurisdiction, any act he does is null and void ab initio.
    [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Coroners, §§ 14, 18.]

5. BRIBERY—NATURE OF OFFENSE.
    A public officer cannot be convicted, under Pen. Code, § 72, of the offense of asking a bribe to influence his official proceedings, unless his office is a public one and the proceedings to be influenced by the bribery are official.

6. SAME.
    Defendant coroner was convicted of the crime of asking a bribe to perform an official duty, in violation of Pen. Code, § 72. An indictment charged that while coroner for the borough of Manhattan he agreed to receive money, with the understanding that his official action would be

influenced in the matter of the death of a person in New Jersey, and there was no evidence that the dead body had ever been in the borough of Manhattan. *Held,* that the facts stated did not constitute a crime, as defendant coroner had no jurisdiction in the premises and could not be convicted of bribery by asking money to influence his official action.

Moses J. Jackson was convicted of bribery. Motion for new trial denied, and motion in arrest of judgment granted.

Wm. Travers Jerome, Dist. Atty. (William Rand, Jr., of counsel), for the People.

Frank Moss, for defendant.

GOFF, Recorder.　By the verdict of a jury the defendant, a coroner, was declared guilty of the crime of bribery, for asking for a sum of money on an agreement or understanding that his official action would be influenced thereby. Before judgment he moves for a new trial on the ground that the court misdirected the jury in matters of law and that the verdict was contrary to law.　Code Cr. Proc. § 465, subds. 5, 6. He also moves in arrest of judgment, on the ground that the facts stated do not constitute a crime.　Id. § 331.

The indictment charges the defendant with the crime of bribery, and its specifications are:　That the defendant was a coroner in and for the borough of Manhattan, of the city of New York.　That one Sheehan duly laid before the defendant, as coroner, an information in writing, sworn to by him, whereby it appeared that one Maria Smith, at the town of Montclair, in the state of New Jersey, suddenly died under such circumstances as to afford reasonable ground to suspect that her death had been occasioned by an act in the borough of Manhattan of one Dr. Adams by criminal means.　Thereupon the defendant issued a warrant for the arrest of Adams, and on the warrant one Alexander, being the same person named and described as Adams, was arrested and arraigned before the defendant, and entered into recognizance to appear and answer.　That while the examination of the charge was pending before defendant he, being a public officer and a person executing the functions of a public office as coroner in and for the said borough of Manhattan, unlawfully and corruptly did feloniously ask and agree to receive of and from one Reass, the attorney for Alexander, a bribe in the sum of $500 upon an agreement and understanding that the official act and proceeding of the defendant, as such coroner, should be influenced thereby.　That in consideration thereof the defendant would, after the hearing of the charge, order that Alexander should be discharged.　The statute under which the indictment appears to have been drawn is contained in section 72 of the Penal Code, and reads:

"A judicial officer, a person who executes any of the functions of a public office, * * * who asks or agrees to receive a bribe or any money, * * * upon any agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby, * * * is punishable," etc.

On the trial all the material allegations of the indictment were either conceded or undisputed, except the allegation that the defendant asked

a bribe. The people, to sustain their case, put in evidence the information on which the defendant based his proceedings, and which stated that:

"Sheehan, detective, being duly sworn, says, on information received from Kitty Canavan, * * * that one Maria Smith, now deceased, was under medical treatment at 253 W. 23d, * * * that she was being treated by a Dr. Adams. * * * The said Maria Smith died on January 1, 1905, at Montclair, N. J. I learned from the county physician, Dr. McKenzie, of Newark, N. J., that the said Maria Smith died from septic peritonitis. I also learned from Chief Gallagher, of the Montclair police department, that the deceased, before she died, stated to him that an operation was performed on her at the home of Madame Canavan by a doctor."

On this "information" the coroner issued a warrant which stated:

"Information having been this day laid before me that Maria Smith has been killed or dangerously wounded by Dr. Adams, as found by the information," etc.

On this warrant Alexander was arrested as the person named Adams, and there was no question raised as to his identity. Mr. Benjamin Reass, an attorney, appeared for Alexander, who was admitted to bail by the defendant. No examination, inquisition, or further proceeding in the matter was had. Mr Reass testified that on January 12th he said to defendant:

"You have never obtained jurisdiction in this case. The body of the deceased is not in the city of New York, but out of the state. If Dr. Alexander committed any crime, that crime is cognizable only by a magistrate. In the absence of the body of the deceased, you never obtained jurisdiction."

Defendant replied:

"Well, how will that help you? If I yield to your urgings and discharge the defendant, the district attorney will seize your client and have him indicted. You would be jumping into the lion's mouth. You would be placing a halter around your client's neck. It is possible to save your client from indictment and further prosecution and to procure his discharge by seeing the people upstairs. They would want about $500."

The next day the defendant said to Mr. Reass:

"The people upstairs want money. That grafter, Chadwick, wants $200."

On January 14th Mr. Chadwick, a deputy assistant district attorney, whose duty it was to attend to cases pending before the coroner, said to the defendant:

"Well, now, coroner, we have an understanding, but it is not definite. Now, what do you want me to do in this case? Do you want me to turn the man out? And the defendant said, 'Yes,' and I said, 'Well, how much am I to get for that?' And he said, '$200.' I said, 'Now, coroner, how much are you going to get out of this case?' and he said, 'I don't get anything. I am going to give it all to you.'"

Later Chadwick said, "Coroner, do you want me to arrange the evidence in such a way that you will be justified in turning out this man?" And he said, "Yes." On January 18th the defendant said to Mr. Chadwick:

"You leave it all to me, my dear boy. I will arrange the whole thing. There is nothing to worry about. I will give you the money. I don't make any money myself out of this, but I want to see that you get something."

The defendant testified:

"I told him [Reass] I couldn't try the case, and Reass said, 'You get a jury and a regular court day,' and I said, 'This case can't be tried by a jury, because I ain't got the body here.'"

Of the many questions that arise on these motions, but three will be considered: First. Are the facts stated in the indictment sufficient to constitute a crime? Secondly. Did the defendant, as coroner, have jurisdiction to exercise the functions of his office on the "information" presented to him? Thirdly. If he did not have jurisdiction, can he, under the statute, be convicted of bribery for asking money to influence his official action?

On the first question, the Criminal Code (section 275, subd. 2) requires that the indictment must contain a plain and concise statement of the act constituting the crime. The act was the asking of a bribe to influence a coroner's official action. If the bribe was asked in any other capacity than an official one, or for a purpose other than to influence official action, the indictment would not lie. Therefore it was necessary to allege the official character and the official action to be influenced.

The official character was not eo nomine as coroner or as a judicial officer, but as a person executing the functions of a public office as coroner in and for the borough of Manhattan, and the official action to be influenced related to the death of a person in the state of New Jersey, whose dead body it was not alleged had ever been in the borough of Manhattan. On this bare allegation the conclusion would have to be that a coroner of the borough of Manhattan had no jurisdiction to inquire into the cause of death. On the face of the indictment this would be a conclusion against its validity, and, in the words of Lord Coke, the pleader must exclude every conclusion against him.

Judicial notice may be taken of the coroner's jurisdiction where the facts upon which his jurisdiction rests are laid within the territorial limits of his jurisdiction; but, he being an officer of inferior and limited jurisdiction, no presumption can arise in his favor, no implication or intendment can be drawn, but every fact necessary to give him jurisdiction must be alleged and proven. The coroner is a judicial officer, when investigating the causes of sudden or violent deaths. 2 Hale, P. C. 62. Coroners' inquests and the duties of coroners are designated special proceedings of a criminal nature. Code Cr. Proc. pt. 6, tit. 1. A coroner is an officer of inferior jurisdiction. He can proceed only according to law. Nothing will be implied in his favor. Crisfield v. Perine, 15 Hun, 201. The jurisdiction of a court of special or limited jurisdiction is never presumed, but must affirmatively appear by proper averment in the record, or its judgment will be deemed void. People, etc., v. N. Y. County, 100 N. Y. 26, 2 N. E. 870.

The act charged was not pleaded as a common-law misdemeanor, but as a statutory felony; and therefore every ingredient of the offense required by statute must be set forth. One ingredient of the offense was that it was within the functions of his office to inquire into the

95 N.Y.S.—19

cause of death of this particular person, who died in, and whose body was in, the state of New Jersey, and that he·had an official duty to perform in relation thereto. The statute applies to certain classes of persons—those who execute any of the functions of a public office—and to acts done by those persons in their official capacity; and the indict‧ment must conform thereto by certain and specific allegations of every essential act and circumstance necessary to constitute the crime.

The defendant's asking for money was not in itself unlawful. It became so only when the asking was done in his official capacity, and for the purpose of influencing his official action. Since, therefore, the unlawfulness of the asking depended upon the official capacity of the defendant to perform an official action in relation to the death of Maria Smith, it was necessary to specifically plead such facts. The rule is that, where the act charged is not itself unlawful, but becomes so by its connection with other facts, the latter must be stated. In Rex v. Everett, 8 Barn. & Ald. 114, it was held that an information for corruptly soliciting a person in the service of the customs not to detain certain goods liable to seizure was defective for not alleging any fact from which it would appear that it was the duty of such person to arrest or detain such goods. In Barefield v. State, 14 Ala. 603, the indictment charged that a bribe was offered to a justice of the peace to decide for the briber any action that might be brought against him, and it was held defective in failing to allege that the matter about which the defendant attempted to influence the judgment of the justice was within his jurisdiction. So in Gunning v. People, 189 Ill. 165, 59 N. E. 494,82 Am. St. Rep. 433, an indictment was held to be fatally defective where it alleged that a town assessor offered to receive a bribe to reduce an assessment, and did not allege that the property assessed was situated in the town for which the defendant was acting in his official capacity. And in Newell v. Comm., 2 Wash. (Va.) 88, it was held that a common-law information which alleged that a justice of the peace received a bribe to vote for a certain person as clerk, and that he did so vote, was defective in failing to allege that an election for clerk was in fact held. Indictments in the following cases were held defective in failing to allege necessary ingredients of the crime: For assaulting an officer in the execution of process, without alleging that he was an officer of the court out of which the process issued. Reg. v. Osmer, 2 East, 334. For contemptuous words to a magistrate, without alleging that he was in the execution of a legal duty at the time. Reg. v. Leafe, Andre, 216, Ir. For nonperformance of duty by a public officer, without alleging that he was such an officer as was bound by law to perform that particular duty. 5 T. R. 623.

While criminal pleading has been simplified by our Code, the principles have not been changed. It is as necessary now to plead every essential to the crime, as it was under the rules of the common law. The defendant was liable to indictment for misconduct in proceeding on the information, or if he had held an inquest while the body was in another state. Jervis, Coroners, 65. In such case the indictment would have had to allege as an essential that the body was not within his jurisdiction. By parity of reasoning, was it not as essential to allege in the

present case that the defendant was exercising the functions of his office in proceeding on information when the body was without his jurisdiction? I am of opinion that it was, and that the indictment did not contain a plain statement of the act constituting the crime, in failing to allege that the defendant had jurisdiction to inquire into the cause of death of Maria Smith and was in the exercise of his official functions relating thereto.

Did the defendant have jurisdiction as coroner? The earliest statute defining the duties and powers of the coroner was St. 4 Edw. I, c. 2 This was in affirmance of the common law and is the basis of his modern jurisdiction. 2 Hawk. P. C. c. 9, § 19. In the first clause it was provided that the coroner shall go to the places where any be slain or suddenly dead or wounded; and through all the subsequent clauses the theme is the viewing of the body before holding the inquest. In St. 3 Hen. VII, c. 1, it was ordained that, if any person be murdered and the murderer escape untaken, the township where the deed was done be amerced, and that the coroner have authority to inquire thereof upon view of the body dead; also his fees were to be paid only on inquisition taken upon view of the body slain. It is "clearly agreed," says Hawkins, in Pleas of the Crown (volume 2, p. 77), "by all the books that a coroner has no manner of power to take an inquisition of death without a view of the body, and that any such inquest taken by him without such view is utterly void." The statute of Edward also provided "that through all shires sufficient men shall be chosen as coroners of the most wise and virtuous knights," thus laying the statutory foundation for the doctrine, which has obtained general acceptance in England and America, that a coroner has jurisdiction only in the county for which he was elected, and that jurisdiction depends for its exercise upon the body being within that county. It is not necessary to refer to the coroners to the admiralty, or to those to whom special franchises were granted. These exceptions but prove the force of the rule, and leave unquestioned the fact that the coroners of the shires so chosen are the true originals of the office in the United States. Pickett v. Erie Co., 19 Wkly. Notes Cas. (Pa.) 60. As to principal rule, 1 East, P. C. c. 6, §§ 4, 5; 1 Bac. Abr. 753; Finch, 388; Jervis, Coroners, 51; Rex v. Ferrand, 3 B. & A. 264; Reg. v. Hinde, 5 Q. B. 944; People, etc., v. Fitzgerald, 105 N. Y. 146, 11 N. E. 378, 59 Am. Rep. 483; Bartholomew County Com'rs v. Jameson, 86 Ind. 154; Crisfield v. Perine, supra; Crocker, Coroners, §§ 949–954; Backus, Coroners, 36; Burnett v. Lackawanna Co., 9 Pa. Co. Ct. R.,95.

Some discussion arose in England as to whether at common law a coroner had jurisdiction to inquire into the cause of death, where the body was found in his county but the cause of death arose in another county. This was accentuated by the decision in Reg. v. G. W. Ry., 3 Q. B. (42 E. C. L.) 333, which quashed an inquisition upon that ground. Parliament then enacted:

"That the coroner within whose jurisdiction the body of any person upon whose death an inquest ought to be holden shall be lying dead, shall hold the inquest notwithstanding that the cause of death did not arise within the jurisdiction of such coroner." St. 6 & 7 Vict. c. 12.

This discussion, decision, and enactment but emphasize the fundamental principle of the coroner's jurisdiction, the presence of the body within his county. In People, etc., v. Fitzgerald, supra, the defendant, as coroner, was indicted for exhuming a body in his county, where no inquest had been held, and where the cause of death arose outside New York state, and the ground of the decision justifying his action was that the body was within his jurisdiction and he had a right to exhume it, even though the cause of death arose elsewhere. This rule of the common law was embodied in our statute (2 Rev. St. [1st Ed.] pt. 4, c. 2, tit. 7, pp. 742, 743), which, in turn, is expressed in our Criminal Code.

It is unnecessary to recount the statutory enactments in this state which declare the jurisdiction of the coroner to be coextensive with the limits of the county in and for which they are chosen. They are in an unbroken line until the Greater New York Charter, as amended by chapter 466, Laws 1901, designated the office of coroner to be in and for the boroughs of the city, and not for the counties composing the city. Section 1570. By section 1571 it is provided that each of said coroners (for the borough) shall possess and perform all the powers and perform all the duties vested in coroners by any existing laws relating to coroners in the city of New York, or by any other law of the state. So that now, instead of the coroner being a county officer, he is a borough officer (People, etc., v. Blair, 21 App. Div. 213, 47 N. Y. Supp. 495), and the powers and duties of the county coroner devolve upon the borough coroner. These powers and duties are defined by title 1 pt. 6, § 773, of the Criminal Code, which says that:

"Whenever a coroner is informed that a person has * * * died under such circumstances as to afford reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, * * * he must go to the place where the person is, and forthwith inquire into the cause of the death, * * * and in case such death occurred in a county in which is situated in whole or in part a city of the first class [New York] * * * summon * * * persons * * * to serve as jurors * * * to inquire into the cause of death; and if it shall appear by the sworn examination of the informant, * * * or * * * from the evidence taken on or during the inquisition, * * * that any person * * * is chargeable therewith, and if such person be not in custody, he must forthwith issue a warrant for the arrest of the person charged, * * * and he must be arraigned before the coroner for examination; and the said coroner shall have power to commit the person so arrested to await the result of the inquisition," etc.

Section 775 says that the coroner must summon "as a witness a surgeon, who must, in the presence of the jury, inspect the body," etc. Section 777 says that "after inspecting the body and hearing the testimony * * * the jury must render their verdict, and certify it by an inquisition," and section 780 provides for the issuing of a warrant by the coroner for the arrest of the party charged by the verdict with the killing. Section 773 says that, when the coroner is informed that a person has died, he must go to the place where the person is and forthwith inquire into the cause of death. What person? The person that has died. This essential of going to the place where the dead person is lies at the threshold of all further proceedings. If he goes to the place and finds that there is no dead person, he cannot proceed. There

is nothing for him to do. And it is equally manifest that, if he cannot officially go to the place where there is a dead person, there is also nothing for him to do. That the dead person must be in a place to which he can go, a place that is within the limits of the territory where he can exercise his authority, is a sine qua non to his performing any official act in relation to the death of such person.

When the defendant was informed that Maria Smith had died under suspicious circumstances, it was his duty to go to the place where she died, if he could; but he could not, for the place was in New Jersey, and that he had no power or authority to go there is too plain for argument. That being so, did any duty devolve upon him, or any authority accrue to him, by the presenting of the information? None whatever, for the reason that the information on its face showed that for him to go to the place where Maria Smith's body lay was a legal impossibility. If a complaint for burglary had been laid before him he would have been precisely in the same position as he was when this information was presented; and what he might have done in the one case would have been as futile and as worthless as what he did do in the other. 'Tis true that the section does not in so many words say that the coroner must view the body when he goes to the place; but it may be fairly implied as a legal intendment, for, if he did not view the body, how could he legally say that there was a dead body upon which to hold an inquest? That such is the meaning is made manifest by the language of section 775, when it requires that a surgeon must, in presence of the jury, inspect the body, and of section 777, providing that after inspecting the body the jury must render their verdict.

But if there remained any possible doubt as to his powers, it is removed by section 1773 of the consolidation act (Law 1882, p. 430, c. 410), which in specific terms limits and defines his jurisdiction. It reads:

"When, in the city of New York any person shall die from criminal violence, * * * the coroner shall subpœna one of the coroner's physicians, who shall view the body of such deceased person, externally, or make an autopsy thereon as may be required," etc.

Every step prescribed by the statutes relates to and is dependent upon the presence of the body within the coroner's jurisdiction; and in the absence of that primal requisite he has neither official capacity nor power to perform any official action in reference to the cause of death, and if he does do anything in reference thereto it is null and void ab initio. In my opinion the conclusion is irresistible that, on the face of the information, the defendant had neither actual nor colorable jurisdiction to inquire into the cause of death of Maria Smith, and that everything he did in relation thereto was without warrant or color of law; and a striking feature is that he knew it, and so admitted on the trial.

Having no power or jurisdiction to perform any official action, could he, in law, ask a bribe to influence his official action? In considering bribery there is danger of being led far afield in the maze of common-law definitions and authorities, and losing sight of the clear and explicit

provisions of the statute, which is comprehensively exclusive and inclusive on and of the subject. Two points of vital importance must dominate the inquiry, the statute and the official. The statute says that a public officer who asks a bribe to influence his official proceeding commits a crime. There is nothing ambiguous, nothing that requires interpretation or recasting or remodeling about this language. It is plain, and, if given its true and legitimate import, the meaning will be as the Legislature intended. Three things must concur to establish the crime: First, the public office; secondly, the bribe; and, thirdly, the official proceeding to be influenced. If any one of these essentials be absent, the crime cannot be completed. The crime is defined by the statute, the office is created by the statute, and its functions are specified and regulated by the statute. A person of the official grade of defendant, executing the functions of a public office, is a public officer only when within the exercise of those functions, and, if he steps beyond the boundaries defined by law, neither the powers, privileges, nor protection of his office will accompany him. The defendant's official life was a creation of law. Its functions were defined and prescribed by law. Outside of those functions he had no official existence; and, when he did an act clearly outside of those functions, it was not an official act, and therefore its performance could not be influenced by asking a bribe. Indeed, when the defendant asked money, and the verdict of the jury that he did must be accepted, he could not by law have asked for a bribe, unless the action to be influenced was an official one and within his power as an official to perform. That was the basic fact to prove. Without it a case does not in law exist. And as Mr. Justice Chase said in United States v. Worrall, Fed. Cas. No. 16,766:

"A case arising under a law must mean a case depending on the exposition of the law in respect to something which the law prohibits or enjoins."

If, as aforementioned, the defendant issued a warrant for arrest on a charge of burglary, and he were to ask for money as a condition of discharge, could it be held under the law that he had any official action in the matter to be influenced? If the defendant, indicted as coroner, was proven to have attempted to exercise the functions of the president of the borough of Manhattan, would it not have been fatal? And was it not equally as fatal to prove that the coroner of Manhattan attempted to exercise the functions of the coroner of Montclair, N. J.? If the defendant falsely swore to a statement, could he be convicted of perjury, in the absence of proof that it was in a judicial or other proceeding authorized by law, and that it was material? Manifestly not, for the law says that false swearing, unless it is material and in such proceeding, is not perjury, just as it says that asking money by a person holding a public office is not bribery, unless it is asked to influence an official action within power and scope of his office. Section 78 of the Penal Code provides that a person who offers a bribe to a person executing any of the functions of a public office, with intent to influence him in respect to any act in the exercise of his powers or functions, is guilty of a crime. Suppose Mr. Reass had offered money to the defendant to discharge Alexander, could he be

convicted under the statute of offering a bribe to influence him in the exercise of his powers and functions? Under the statute he could not, for the obvious reason that the defendant had no powers or functions to exercise. Then, is not the converse equally true, that the defendant could not in law ask for a bribe to influence his official action, when under the law he had no official action to perform? If the defendant had any authority to act as coroner, he must have derived it from the law, and from the occasion presented by the particular case for its exercise. If the occasion did not arise, he had no authority to act, and consequently had no official act to perform.

It may be urged that, though the arrest of Alexander was unlawful, it was the duty of the defendant to discharge him, and therefore he had an official action to perform. Whatever the moral aspect may be, the admitting of this proposition would involve the further admission that an official duty enjoined by law may arise from an unlawful condition. Such position is wholly untenable and repugnant to the law. It may be that the defendant committed the offense specified in section 556 of the Penal Code, which says that "a public officer who unlawfully and maliciously, under pretense or color of official authority, arrests another commits oppression." Or an attempt at extortion under section 552. The distinction is obvious. Oppression may be by pretense or color of authority, where none exists; bribery can only be where an official action authorized by law may be influenced.

While the precise question here involved has not, so far as I have ascertained, been judicially passed upon, cases analogous in principle have received the attention of the courts. In Newman v. State, 97 Ga. 367, 23 S. E. 831, the law required that to validate an appeal a bond should be given. By agreement of attorneys an appeal was taken without a bond. An attempt was made by defendant, one of the litigants, to bribe the justice before whom the appeal was taken. He was convicted of bribery, and the conviction was reversed on the ground that the justice had no jurisdiction to hear an appeal that was void. In Comm. v. Reese (Ky.) 29 S. W. 352, it was held that a person offering money to a councilman to induce him to vote for a certain person to fill an office which did not exist was not guilty of bribery. In Barefield v. State, Rex v. Everett, and Newell v. Comm., supra, the same principle was substantially held to apply. In United States v. Boyer (D. C.) 85 Fed. 425, the defendant offered to bribe an inspector in the Department of Agriculture, appointed under authority of Congress to make examination of slaughtered animals, to allow such carcasses as he condemned to be made into food products. He was convicted of bribery. On appeal it was held that the act of Congress appointing the inspector was unconstitutional, and that consequently the defendant could not be convicted of bribing an officer to influence him in the performance of duties for which there was no warrant of law. This is a well-considered case, and on the power of Congress and the interstate commerce law has been frequently cited.

In United States v. Worrall, supra, it was held by Mr. Justice Chase, though in a divided court, that the defendant could not be convicted of attempting to bribe a Commissioner of Revenue in awarding a con-

tract, because the act of Congress devolved upon the Secretary of the Treasury the power of awarding the contract, and also that Congress, in creating the office of Commissioner of Revenue, did not define the crime of bribery of such office. In the recent case of People, etc., v. Butler, 77 S. W. 560, the Supreme Court of Missouri unanimously reversed a conviction for bribery, where the defendant was convicted of having offered a bribe to a member of the board of health of St. Louis to vote for an award of contract to his firm. It appeared that for years the board of health had annually awarded such contracts, but it was found that the charter conferred such power on the board of works, and not on the board of health. The ground of reversal was that, even though the board of health had been for years awarding those contracts, that did not confer a legal power to do so, and that a member of the board could not be bribed to do an official act for which there was no authority in law. This case received from the court very careful consideration, as indicated by the learned and exhaustive opinion of Judge Fox. The leading cases were analyzed and distinguished, and the learned judge concluded that law and the great weight of authority sustained the doctrine that a public official could not be bribed to do an act which he had no authority in law to perform.

The principle is clearly applicable to the case at bar, that a public official cannot be convicted of bribery for asking money to influence his action which is not official, and which he has no authority in law to perform. While justice revolts at the attempt of any of its officers to corrupt its channels, and a proven charge of dishonesty under the guise of official character justly excites indignation, yet an accused, no matter how great his moral obliquity, cannot be judicially sentenced for a crime unless it be proven that he has committed an act which the law declared to be criminal.

Were the decision on the motion for a new trial the only question to be determined, I would be constrained to grant it on the grounds that the verdict is contrary to law, and that on the vital question of jurisdiction the jury were misdirected as to matters of law; but inasmuch as there are momentous questions involved affecting the conduct of public officers, it may be conducive to that authoritative and definitive voice of the law, which is so essential to the certain administration of justice, that as on a case reserved the appellate tribunal should determine the law of the whole case. Therefore, in order to afford opportunity to the people for such an appeal, if the learned district attorney be so advised, judgment is arrested on the court's own motion, because it cannot be pronounced as a conclusion of law upon the facts of the case (The King v. Waddington, 1 East, 146; State v. Allen, R. M. Charlt. 518), and also because the facts stated do not constitute a crime.

Should the learned district attorney resolve to submit the case to the grand jury as either attempt at extortion or oppression, I direct that the defendant be committed on such charge in default of bail, the amount of which may be settled on order.