## BENSON v. UNITED STATES.*

---

CRIMINAL LAW; BRIBERY OF UNITED STATES OFFICIALS; INDICTMENTS; JOINDER OF COUNTS.

1. Section 5451, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 3680), relating to the bribery of United States officials, includes an attempt to induce an officer to do or omit any act in violation of his lawful duty, on any question, matter, or proceeding which may at any time be pending or which may by law be brought before him in his official capacity; and an indictment under that section, which alleges that during an investigation by special agents of the government, under orders of the Secretary of the Interior, of the alleged unlawful appropriation of the public lands by the defendant and another, the defendant paid money

---

*See *Hyde* v. *United States, post,* 362.—Reporter.

to certain officers of .the government to induce them to reveal the contents of the report of such special agents when it should come into their hands,—is sufficient, without any allegation that the report at the time of such payment had come into the possession of such officers, or that it ever would do so; the investigation and report being pending matters when the alleged briberies were committed.

2. One count of an indictment may properly refer to matter in a previous count, so as to avoid unnecessary repetition; and a charge in one count that the accused did an act under the circumstances and conditions set forth in a preceding count, "well knowing, all and singular, the premises set forth in that count," is a sufficiently full and distinct reference to the matter contained in the first count to incorporate it in the second. (Following *Lorenz* v. *United States*, 24 App. D. C. 363.)

3. Where an indictment for bribery of a government officer contains eight counts, the first seven of which allege the offer of money by the defendant to the same person, in the same official relation, to induce the same violation of official duty, in respect to the same matter; and the only variation is in the eighth count, which alleges the giving of money to another official under like conditions,—the counts are properly joined. (Construing sec. 1024, U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 720.)

4. An indictment under sec. 5451, U. S. Rev. Stat., for bribery of government officials, examined, and *held* properly to state every element of the offense intended to be charged; to be sufficiently full to enable the defendant to prepare his defense or to plead a former acquittal or conviction in bar, and to be within the understanding of the average jury.

5. Where an indictment under sec. 5451, U. S. Rev. Stat., for bribing government officials to disclose to the defendant the contents of an expected report by special agents investigating certain land frauds which the defendant and another were accused of perpetrating, alleged that it was the duty of such officials, under the circumstances recited, to keep the contents of such reports secret from those charged with such frauds, including the defendant, it was *held* that the recitals supplied a sufficient basis for the allegation of duty on the part of such officials, and that it was not necessary to show that they were under a statutory duty not to disclose the contents of such report. (Following *Tyner* v. *United States*, 23 App. D. C. 356.)

6. Where matter in an indictment is capable of different meanings, that will be taken by the court which will support the proceedings, not that which would defeat them; and the language is to be construed

in that sense in which the party framing the charge must be understood to have used it, if he intended his accusation to be consistent.

No. 1649. Submitted March 22, 1906. Decided April 3, 1906.

HEARING on an appeal (specially allowed) from an order of the Supreme Court of the District of Columbia, overruling a demurrer to an indictment for violation of sec. 5451, U. S. Rev. Stat. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Frank H. Platt, Mr. J. C. Campbell,* and *Mr. R. Golden Donaldson* for the appellant.

*Mr. D. W. Baker,* United States Attorney for the District of Columbia, *Mr. Francis J. Heney,* Special Assistant to the Attorney General, and *Mr. Arthur B. Pugh,* Special Assistant to the United States Attorney, for the United States, appellee.

Mr. Justice McCOMAS delivered the opinion of the Court:

This is a special appeal allowed from an interlocutory judgment of the court below overruling the defendant's demurrer to an indictment for bribery.

The indictment contains eight counts, and is twenty pages in length. In substance, the first count alleges that on January 1st, 1901, and thenceforward until April 1st, 1903, John A. Benson was engaged with Hyde at San Francisco in the business of unlawfully obtaining from the United States the possession of and the title to its public lands, outside of forest reserves, and unlawfully exchanging such public lands for school lands of California and Oregon, obtained by said Benson and Hyde during said period from said States by a false and fraudulent practice of them, Benson and Hyde, whereby title to and possession of divers large tracts of such school lands were obtained by them by the various methods of the fraudulent practice fully set out in this count.

On January 9th, 1903, an investigation of said alleged unlawful appropriation of said public lands of the United States was ordered by the Secretary of the Interior with objects set out in this count, and also with a view to begin legal proceedings for cancelation of patents to such lands obtained by Benson and Hyde, and to punish guilty persons. Such investigation was thereupon begun and carried on by Pugh and Steece, special agents, under said order of the Secretary, and under instructions that they transmit a report to the Secretary, which report, when transmitted, would be for the exclusive use of the proper officers, including the Secretary, the Commissioner of the General Land Office, and the chief of the special service division of the latter, the report to be secret and not for the consideration of any person not a proper officer, and particularly not for the inspection of Benson or Hyde, and would be such in character that, tending to establish the charge against Benson and Hyde, its contents if revealed to either of them would render it more difficult and expensive to establish such unlawful appropriation of lands by them and defeat the objects of the investigation.

That during the period aforesaid one Woodford D. Harlan was chief of the special service division in the Land Office, that said Harlan, under the law and regulations prescribed by the Secretary of the Interior, was charged with the duty of protecting the public land from unlawful entry and appropriation and the supervision of the work of special agents, and the consideration of their reports relating to public lands, and with the charge of proceedings for cancelation of unlawful and fraudulent entries of the same, and of preparing cases for legal proceedings when necessary; and during such period, and by reason of his official functions, it was the duty of the said Harlan, when discharging the aforesaid duties, to keep for the exclusive use of said proper officers of the Interior Department and of the Land Office all information and reports coming to his department by virtue of his office, and not to allow such information or reports to be given to or obtained by persons charged with such violations of law or with making such fraudulent entries; and said Benson, on March 15th, 1903, in the District of

Columbia, unlawfully gave $200 to said Harlan, being an officer of the United States and a person acting for and on behalf of said United States in an official function, under the Department of the Interior, with intent to induce said Harlan to violate his lawful duty;—that is, to reveal to said Benson, when the same should come to his, Harlan's, hands, in his official capacity, the contents of the special agents' report pertaining to said investigation.

And so the grand jurors, etc., say that said Benson, on March 15th, 1903, in manner and form aforesaid, unlawfully did give money to an officer of said United States, and to a person thus acting for and on behalf of said United States in an official function under and by authority of a department of the government of said United States, with intent then and there on the part of him, the said John A. Benson, to induce the said officer and person to do an act in violation of his lawful duty.

This count charges the defendant with the crime of bribery under section 5451, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3680), which provides:

"Every person who promises, offers, or gives * * * any money or other thing of value * * * to any officer of the United States, or to any person acting for and on behalf of the United States in any official function, under or by authority of any department or office of the government thereof, * * * with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, * * * or with intent to * * * induce him to do or omit to do any act in violation of his lawful duty, shall be punished as prescribed, etc."

1st. Upon this special appeal from the order of the court below overruling the defendant's demurrer to the indictment, the defendant makes ten assignments of error. His counsel have argued these with great ability and ingenuity. The first two are general and depend upon the other specific objections to this indictment, all of which, except the tenth, more especially apply to the first count, though urged, however, against the whole indictment.

It is said this count is bad because therein it appears that at the time of the alleged payment to Harlan the special agents' report therein referred to had not come within the possession, knowledge, or reach of Harlan, and it is not alleged that it ever would; and, even if it should, the count fails to show that Harlan had any duty concerning it, or that he would ever have any such duty; and the charge of bribery under section 5451 cannot be based upon a payment to an officer to induce him to perform an act as to which he has not and may never have any duty, for Harlan was not forbidden by any lawful duty to reveal to the defendant the contents of the said report, even if he ever should be in a position to do so.

Counsel for defendant say that the indictment and this count is framed under the last clause of section 5451, making it a crime to give money to any person acting for the United States in any official function with intent to induce him to do, or omit to do, any act in violation of his lawful duty; for they say this count alleges the money to have been given "with intent * * * to induce the said Woodford D. Harlan (or William E. Valk) to do an act in violation of his lawful duty,—that is to say, to reveal to him, the said John A. Benson, *when the same should come to his hands and knowledge in his official capacity,* the contents of the report of the said special agents."

They insist bribery must be predicated upon a payment made to induce employees of the Land Office to reveal a report not then in existence and not within their official functions or knowledge, and whether it would be depended upon contingencies; and bribery cannot be predicated upon the happening of a contingency. Under this count, it is said Harlan had no present duty with reference to a then nonexistent report; and, since it might never exist, Harlan might never have the duty in respect to it, and the essential element of bribery under this section is that the act to be done or omitted must be a violation of the official lawful duty. If money be paid to an official outside of his official duties the transaction is innocent, and the original act cannot be made corrupt by the happening of some future contingency bringing the act to be done within the scope of the official's duty.

If we assume for a time that this statute against bribery of officials, as well as this count under it, be aimed at reports which had not come and might never come into the official hands or knowledge, we observe, in the first place, the authorities relied upon do not support the defendant's proposition and argument as we have stated it. In *Re Yee Gee,* 83 Fed. 145, Gardner, holding at the time an appointment from the Secretary of the Treasury as an interpreter of the Chinese language, was offered a bribe by Yee Gee to secure from Gardner a favorable translation of Chinese documents which Yee Gee expected would be offered in evidence before the commissioner upon a criminal charge there pending against Yee Gee; but the court held that Gardner was an employee of the Treasury Department, and his appointment did not constitute him an officer to translate Chinese documents in a judicial proceeding; he could not even be an interpreter before the commissioner without such commissioner's authority, which had not been given. The court held the alleged attempt of bribery by Yee Gee was not a completed offense under section 5451, because it was not intended to influence Gardner in respect of his duty under his appointment by the Secretary of the Treasury, that Gardner was not at the time acting for or on behalf of the United States in an official function; and the court concluded: "An offer made to a person in contemplation of a mere probability that he may be called to perform official functions, and intended to influence his conduct in performance of such functions if he shall be so called, does not violate this statute."

In *State* v. *Butler,* 178 Mo. 272, 77 S. W. 560, an officer of a company having a contract to dispose of the garbage of St. Louis was indicted for attempted bribery of a member of the board of health to procure that member to vote for the renewal of the contract under a statute which defined bribery as an offer to give money to any public officer to influence his vote on any question which may by law be brought before him in his official capacity; but there was at the time no law authorizing the question on which he was sought to be influenced by bribery to be brought before him. The court held that the attempt to bribe this member had no relation to his "official capacity."

*State* v. *Howard,* 137 Mo. 297, 38 S. W. 908, is a case hard-
ly pertinent. There Howard sought to induce Hays to commit
perjury upon condition that defendant, Howard, was there-
after indicted for the offense for which he was then only under
recognizance, and the court held that this was not a " 'cause,
matter, or proceeding,' under the statute, because not then pend-
ing; hence defendant was not guilty of any offense under the
statute." *State* v. *Joaquin,* 69 Me. 218, is substantially the
same as the case just mentioned.

*Newman* v. *State,* 97 Ga. 367, 23 S. E. 831, was a case in a
justice's court, and the justice had entered an oral agreement of
counsel that the attorney of the losing party "might appeal by
consent;" but, after judgment, no bond or security was given
as required by the statute. The appeal was void, and no case
was lawfully pending in the appellate court in reference to
which the offense of attempting to bribe the presiding justice
could be committed, and the judgment was reversed. And so,
also, in *Barefield* v. *State,* 14 Ala. 605, the court said it must
be shown the proceeding was pending before the officer at the
time the gift was made.

In *United States* v. *Gibson,* 47 Fed. 834, where defendant
was indicted under this section for offering money to an inter-
nal revenue officer to induce him to set fire to a distillery in his
charge, the court properly held the only duty of such officer was
to see that the spirits produced in the distillery were made to
pay the internal revenue taxes, and that it was not in the line
of his official duty to burn a distillery. Of course the bribe
offered was for an act entirely outside the official function of
the gauger, and was not made to induce the officer to do, or omit
to do, any act in violation of his official duty.

In *People* v. *Jackson,* 47 Misc. 60, 95 N. Y. Supp. 286,
upon the conviction of the coroner of the county of New York
for receiving a bribe, judgment was reversed because the woman
who was subject to a criminal abortion by Doctor Adams died
in New Jersey, and the coroner of New York had not, and nev-
er could have, any official function to exercise in respect of
her death.

The able counsel for the defendant in the case before us in-

sist that the cases just reviewed sustain the contention that the essential element of the crime of bribery under this statute is that the act to be done or omitted must be a violation of the official's lawful duty. These cases sustain that proposition, but all of them were cases, whatever happened to be the varying form of the bribery statute in the different States, in which the bribe or offer to bribe did not relate to any pending matter in which the person to be induced might or could have at any time an official lawful duty, and in nearly all of them he never could have any official duty because he never had any official function.

Defendant's counsel are industrious in striving to limit the gravamen of this count to the special agents' report, and they argue that since in this count it appears affirmatively that such report had not come within the possession or knowledge of Harlan, and there is no allegation that it ever would, Harlan had no duty concerning it, and it does not appear he ever would have such duty; and therefore bribery cannot be predicated upon the payment to Harlan to induce him to perform an act as to which he has not, and may never have, any duty.

We believe that both section 5451 and this indictment based upon it have a much broader scope, and include the attempt to induce an officer to do or omit any act in violation of his lawful duty *on any question, matter, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity;* that the investigation described in the count was the *pending proceeding,* and the report thereon by the special agents was a *pending matter,* an incident only in the investigation which was the *pending proceeding.* This count alleges that on January 9th, 1903, an investigation of the unlawful appropriation of public lands by Benson and Hyde was ordered by the Secretary of the Interior; that such investigation was immediately begun and carried on by Pugh and Steece, special agents, under instructions from the Secretary of the Interior that their report be transmitted to the Secretary, and that if the contents of such report were revealed to Benson and Hyde, the injurious consequences alleged would be produced, *"and the objects of the said investigation defeated;"* and this

count further charges that Benson gave money to Harlan to induce him to reveal to Benson the "contents of the report of the said special agents" pertaining to the investigation aforesaid. It is charged the investigation was ordered January 9th, 1903, and was begun and carried on and the money was given on March 15th, following, and at that time, as we construe this count, the investigation was still a pending proceeding. The making of the report upon the pending investigation was but a part of it. It matters little that the report had not yet been filed, and might never be filed; the investigation was pending soon after January 9th, 1903, and was still pending on the date when this count charges Benson gave money to Harlan. Harlan's official duty respecting such investigation, his supervision of the work of special agents and preparing instructions for them, and considering, when received, their reports of alleged violation of public land laws referred to them for investigation, and Harlan's whole duty, and sufficient facts from which his duty arose, are fully and properly set forth in this count. This statute would be useless if a cunning person, by the unlawful practice set out in this count, could thereby possess himself of the public land, and could with impunity bribe, or offer to bribe, an official to whom the report of a pending investigation of the offender's unlawful acts would come, if, while the investigation was still a pending proceeding, the offender so carefully timed the bribe as to offer it before the report was filed. We cannot believe that Congress intended to provide opportunity for bribery like that here alleged, that the inducement could be offered to the official at the time the revelation would be most useful to the offender and with impunity to him at that very time. By the defendant's construction, after the special report was filed it was no longer a pending matter; before it was filed, and when it might never be filed, it was not a pending matter; and under this statute Benson could only bribe Harlan at the moment of filing. It was the investigation that was pending, and the special agents were making it, and the reports of special agents were but a part of the pending proceeding, which was pending before the reports could come and would be pending after they came, and at any period during its pendency Harlan

had official duty; and, if Benson, before or after the incoming of the report, gave money to Harlan, he gave it to induce him to do an act in violation of his lawful duty, and with intent to influence his action on a matter or proceeding pending in the words of the statute and by law brought before him in his official capacity. Therefore, we conclude that in respect of the third, fourth, fifth, and sixth assignments of error the court below did not err in overruling the demurrer to the first count in this indictment. After we consider the whole indictment, we will recur to this question.

2d. The second count alleges that Benson on March 20th, 1903, in this District, "under the said circumstances and conditions set forth in the first count of this indictment, while knowing all and singular the premises set forth in that count, unlawfully gave said Harlan $200 with the same allegations of intent as in the first count."

The third count differs from the second count only in charging payment on March 25th, 1903, of $100. The reference in both these counts to the circumstances and conditions set forth in the first count, referred to, to avoid unnecessary repetition, in our opinion is sanctioned by the decision of this court in *Lorenz* v. *United States,* 24 App. D. C. 363. See *Blitz* v. *United States,* 153 U. S. 308, 316, 38 L. ed. 725, 728, 14 Sup. Ct. Rep. 924; *Crain* v. *United States,* 162 U. S. 625, 40 L. ed. 1097, 16 Sup. Ct. Rep. 952. In the case last cited the first count set out in full a declaration for an invalid pension and an affidavit thereto, and in the second count it was alleged that said declaration and affidavit are in words and figures as set out in the first count, whereupon the court said: "One of the objections made to the second count was that it was incomplete, and referred in an uncertain, indefinite manner to documents set forth in the first count. The reference to the declaration and affidavit set forth in the first count indicated the documents that were intended to be incorporated, by reference, into the second count; and this reference was not affected by the fact that the first count was defective, or by the fact that judgment upon that count was arrested. One count may refer to matter in a previous count so as to avoid unnecessary repetition; and,

if the previous count be defective or is rejected, that circumstance will not vitiate the remaining counts, if the reference be sufficiently full to incorporate the matter going before with that in the count in which the reference is made." *Crain* v. *United States,* 162 U. S. 633, 40 L. ed. 1098, 16 Sup. Ct. Rep. 952. Mr. Bishop says the reference must be so full and distinct as, in effect, to incorporate the matter going before with that in the count wherein it is made. 1 Bishop, New Crim. Proc. sec. 431. This feature will be more fully considered in the discussion of an indictment against Benson and Hyde for conspiracy.

The fourth count, by way of inducement, repeats the description of the business, and of the false and fraudulent practices of Benson and Hyde in the identical language of the first count, except that they are alleged to have been engaged in the said business on January 1st, 1901, "and from thence hitherto." The allegation in this count concerning an investigation by the Secretary of the Interior is not materially varied from the first count. It is alleged that Harlan was a clerk regularly employed in the said General Land Office and so, having access to the records of the special service division thereof, was in a position to ascertain and know the contents of special agents' reports; and it is thus alleged his duty arose to preserve and keep for the exclusive consideration of the proper officers of said department and of the General Land Office all information which might come to his knowledge by reason of his office pertaining to special agents' reports in regard to said investigation. Finally, it alleges that defendant paid Harlan on March 15th, 1903, in this District, $200, with allegations of intent identical with the allegations of intent in the first count.

The fifth count alleges that, under the circumstance and conditions set forth in the fourth count, while knowing the premises, said Benson, on March 15th, 1903, gave said Harlan $200. The allegations of intent are the same as in the fourth count.

The sixth count is identical with the fifth, except that it alleges the payment by Benson to Harlan of $100 on March 25th, 1903.

The seventh count is identical with the fourth count, except that it includes one Burns as a third special agent by whom the

investigation was begun under the Secretary's order, and it alleges the payment, by Benson to Harlan, of $200 on December 18th, 1903.

The eighth count is identical with the seventh count, except that there is the additional allegation that the report of the special agents was made and transmitted to the Secretary of the Interior on November 17, 1903, and except that this count charges bribery of William E. Valk, alleged to have been a clerk in the General Land Office. The allegations concerning his employment and duty are identical with the allegations concerning Harlan's in the fourth count, and it is alleged that Benson paid Valk $100 on December 16th, 1903.

We have discussed the assignments of error as if applying only to the first count, for convenience and clearness. In our opinion the considerations which lead us to hold the first count good apply to the other counts we have thus summarized already upon the assignments of error we have discussed, and, for the reasons stated, we concur with the court below so far as we have proceeded.

3d. The seventh assignment of error is that the indictment improperly joins several different and independent alleged offenses to the prejudice of the defendant. Section 1024, Rev. Stat. (U. S. Comp. Stat. 1901, p. 720), says that when there are several charges against any person for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses which may be properly joined, the whole may be joined in one indictment in separate counts. The Supreme Court has repeatedly sanctioned the joinder of offenses where the different acts or transactions were not so clearly of the same class of offenses as are those joined in the different counts of this indictment. The offense charged in each count is the same. The offer of money is alleged in the first seven counts to have been made by the defendant to the same person, Harlan, in the same official relation, to induce the same violation of official duty in respect of the same special agents' report in the same pending investigation of alleged public land frauds. In the eighth count the only variation is that the defendant is alleged to have given

money to Valk, a clerk in the same Land Office, under like
conditions and official relation with those of Harlan in the other
counts. The question is so well settled that we need not further
discuss it.

"The accused having been charged with different acts or
transactions 'of the same class of crimes or offenses,' it is scarce-
ly necessary to say that the transactions referred to in the
indictments, being of the same class of crimes, could properly—
that is, consistently with the essential principles of criminal
law—be joined in one indictment against a single defendant,
without embarrassing him or confounding him in his defense
(*Pointer* v. *United States,* 151 U. S. 396, 400, 38 L. ed. 208,
211, 14 Sup. Ct. Rep. 410)."

The eighth and ninth assignments of error urge that the in-
dictment is bad because it does not properly notify the defend-
ant of the charge made against him to enable him to prepare his
defense, or to plead an acquittal or conviction in bar, and be-
cause the charges made therein are so prolix, involved, confused,
and uncertain that the jury could not understand them.

We have examined the indictment with great care, and are
convinced that it is sufficiently clear and certain to fully apprise
the defendant, that it contains every element of the offense in-
tended to be charged, and shows with accuracy that he could
plead a former acquittal or conviction. We do not doubt that
an average jury is capable of understanding it quite as well as
justice to the defendant requires.

The tenth and last assignment of error says that all the counts
subsequent to the first are bad because they do not contain suf-
ficient words of reference to incorporate in them the material
averment of the first count. We have considered this objection
in connection with the second count, and, for the reasons then
stated, we hold, upon the authority of *Lorenz* v. *United States,*
*supra,* that the remaining counts are also good.

4th. The defendant's counsel placed most reliance upon
the proposition that neither Harlan nor Valk was forbidden by
any lawful duty to reveal to Benson the contents of the special
agents' report, if either should ever happen to be in a position to
do so. They argued that the indictment contains no allegation

of fact, saying that to reveal the contents of the report would be a violation of duty by either of them, and that section 5451 contemplates only a payment to induce a violation of some duty prescribed by law, and that there is no allegation of any statute, rule, regulation, or order making it the duty of clerks in the Land Office to maintain secrecy in respect of special reports, or making such reports confidential; and, if there were such rule, regulation, or order, promulgated by the Secretary or the commissioner, the same could not be the basis of a criminal prosecution; that, at most, the indictment shows no more than that, if the report should be made and filed in the Land Office, Harlan and Valk might have had access thereto; and it is said this is no sufficient foundation for a charge of bribery under the statute.

If the term "lawful duty" means only a duty imposed by law, such narrow construction of this statute might cause great doubt, for this indictment appears to admit that neither of these officials was prohibited by a statute from revealing the contents of such reports.    Despite the elaborate and ingenious argument of defendant's counsel, we still hold, as this court has heretofore held, that every incidental, yet necessary, duty incumbent upon an official to perform need not be designated by statute.

In our opinion the Secretary of the Interior could prescribe regulations of his office and of its bureaus, and for the custody of papers and reports in investigations, and a breach of such regulations would be an act in violation of the lawful duty of the officials named and described in this indictment.

In a case not unlike that we are here considering this court applied the statements of the Supreme Court describing lawful official duty:    "A practical knowledge of the action of any one of the great departments of the government must convince every person that the head of a department, in the distribution of its duties and responsibilities, is often compelled to exercise his discretion.    He is limited in the exercise of his powers by the law; but it does not follow that he must show a *statutory provision* for everything he does.    No government could be administered on such principles.    To attempt to regulate by law the minute movements of every part of the complicated ma-

chinery of government would evince a most unpardonable ignorance on the subject. Whilst the great outlines of its movements may be marked out, and limitations imposed on the exercise of its powers, there are numberless things which must be done, that can neither be anticipated nor defined, and which are essential to the proper action of the government. Hence, of necessity, usages have been established in every department of the government which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits." *United States* v. *Macdaniel,* 7 Pet. 1, 13, 8 L. ed. 587, 591; *Tyler* v. *United States,* 23 App. D. C. 356.

It is true the allegation of duty is of no avail unless the facts necessary to raise it are clearly stated, and a simple averment of a duty without a statement of facts from which such duty arises is a mere conclusion of law. The skilful analysis of the allegations of duty and the allegations pertaining thereto in this indictment, by the defendant's counsel, fails to suggest any allegation to support the duty alleged, falling short of a statute prohibiting the clerks in the departments from exhibiting official papers. As was said in *Stokes* v. *United States,* 157 U. S. 187, 191, 39 L. ed. 667, 668, 15 Sup. Ct. Rep. 617: "Indeed, it is difficult to see, nor do the defendants suggest, what other allegations were necessary to define the offense with greater clearness or certainty; and it is impossible that they could have been misled as to the nature of the charge against them." *Evans* v. *United States,* 153 U. S. 584, 38 L. ed. 830, 14 Sup. Ct. Rep. 934. We appreciate that regulations of the heads of departments under authority granted by Congress do not make a thing required by such regulations a thing so required by law as to make the neglect to do the thing a criminal offense in an official, where a statute does not distinctly make the neglect in question a criminal offense. Harlan, if all the things alleged in this indictment, whereon his duty is predicated, were true, would not, if he had committed a breach of such duty, have been guilty of a crime. The same department regulations, however, under authority from Congress, may be regulations prescribed by law so as lawfully to support acts done under them, and may require acts to be done in accordance with them, and thus have in

a proper sense the force of law, so as, in this instance, to impose upon Harlan a lawful official duty. See *Caha* v. *United States,* 152 U. S. 220, 38 L. ed. 418, 14 Sup. Ct. Rep. 513.

The added force of custom and usage in the Interior Department and in one of its subordinate bureaus, the General Land Office, are not to be wholly disregarded, while the rules and regulations of the Interior Department, including the General Land Office, are matters of which courts of the United States take judicial notice. See *Caha* v. *United States,* 152 U. S. 221, 38 L. ed. 419, 14 Sup. Ct. Rep. 513.

"Duties imposed by law or regulation promulgated thereunder, and not inconsistent therewith, require no proof. Additional duties that may have been imposed from time to time, by order or direction in the ordinary course of administration of the business of the department, must be proved like other facts. But the direct allegation of the fact in the indictment is all that is required; it is not necessary to set forth the evidence, or to negative any theory of the defense. *Stokes* v. *United States, supra; Evans* v. *United States,* 153 U. S. 584, 594, 38 L. ed. 830, 834, 14 Sup. Ct. Rep. 934.

"By section 161 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 80), the head of each department is authorized 'to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it.'" *United States* v. *Eaton,* 144 U. S. 677, 686, 36 L. ed. 591, 593, 12 Sup. Ct. Rep. 764.

We are of opinion that defendant's counsel subject the allegations in this indictment upon which the allegations of Harlan's duty depends to hypercriticism. In construing the substantial requirements of indictments, the rule is, says Chitty, "that, where a matter is capable of different meanings, that will be taken by the court which will support the proceedings, not that which would defeat them. And the language is properly to be construed 'in that sense in which the party framing the charge must be understood to have used it, if he intended his accusation to be consistent.' Such is the rule for all writings,

namely, the court leans to the interpretation which will make them effectual, avoiding what would render them null." 1 Bishop, New Crim. Proc. § 510.

We are of opinion that the allegations of the investigation ordered, for the objects described, the carrying on of the investigation by the special agents under instructions for transmission of information and reports, with directions for keeping the same secret, and the allegation of the functions of Harlan as chief of the special service division in the Land Office, coupled with the fact that it was the alleged fraudulent practice of Benson and Hyde which was the subject of the investigation then pending, and other related allegations, supply a sufficient basis for the allegation that it became and was the duty of said Harlan to keep the information and reports relating to the pending investigation secret, and not to allow the same to be given to, or obtained by, persons charged with such violations of law,—especially not to Benson and Hyde, whose fraudulent practice was then the subject of the pending investigation.

We hold the same opinion respecting the counts describing Harlan and Valk, respectively, as clerks in the General Land Office.

For the reasons we have assigned, the interlocutory judgment of the court below overruling the demurrer and requiring the defendant to plead must be affirmed, and the cause remanded for further proceedings according to law, and it is so ordered.

*Affirmed.*