PEOPLE v. JACKSON.

(Supreme Court, Appellate Division, First Department. November 22, 1907.)

1. BRIBERY—JUDICIAL OFFICER—CORONERS.

Pen. Code, § 72, punishes a judicial officer receiving a bribe under an agreement that his judgment or other official proceeding shall be influenced thereby. Under Code Cr. Proc. § 773, as amended by Laws 1887, p. 400, c. 321, a coroner when engaged in investigating the killing or wounding of a person performs magisterial functions and acts in a judicial or quasi judicial capacity. *Held*, that a coroner receiving a bribe for releasing one brought before him charged with criminal homicide, and held to bail, would be guilty of bribery, even though he had no jurisdiction to proceed with the case.

2. SAME.

The decision of the coroner that he had no jurisdiction to proceed with the case was an official act.

3. CORONERS—JURISDICTION.

Under Code Cr. Proc. § 773, as amended by Laws 1887, p. 400, c. 321, and Code Cr. Proc. §§ 781, 783, coroners have magisterial jurisdiction in

case of homicide, may issue a warrant for the arrest of one probably chargeable with the crime, and hold him to answer or discharge him. *Held,* that even though a coroner acted erroneously in issuing a warrant for the arrest of one charged with criminal homicide, since deceased lay dead in another state, it could not be said that he acted without his jurisdiction.

Appeal from Trial Term.

Moses J. Jackson was convicted of bribery, and from an order granting a motion in arrest of judgment the people appeal. Reversed.

See 95 N. Y. Supp. 286.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, HOUGHTON, and SCOTT, JJ.

Robert C. Taylor, for the People.

Frank Moss (Samuel Marcus and Isidor Wels, on the brief), for respondent.

SCOTT, J. The people appeal from an order granting a motion in arrest of judgment. The defendant was tried in the Court of General Sessions, and convicted of the crime of bribery. Subsequently the order appealed from was made arresting the judgment, upon the ground, as recited in the order, that the facts stated in the indictment and proven at the trial do not constitute a crime. The question of law raised by this appeal presents itself therefore as if raised by a demurrer to the indictment:

The indictment charges that on a date stated the defendant was a coroner in and for the borough of Manhattan, county of New York; that on said day a verified information had been laid before said defendant as a coroner, "wherein and whereby it appeared that one Marie Smith had on January 1, 1905, at the town of Montclair, state of New Jersey, suddenly died under such circumstances as to afford reasonable ground to suspect that her death had been occasioned by an act, in the borough of Manhattan, county of New York aforesaid, of one named in the said information as a Dr. Adams, by criminal means, and that the said person so named as Dr. Adams was chargeable with the killing of the said Marie Smith, and that there was probable cause to believe that he was chargeable therewith"; that said defendant as such coroner did thereupon issue a warrant for the arrest of the said Dr. Adams, by and in which the said defendant, as coroner, did direct and command any sheriff, constable, marshal, or policeman in the city of New York forthwith to arrest the said Dr. Adams, and to bring him before the said coroner, or, in case of his absence or inability to act, before the nearest or most accessible coroner in the said borough, to answer the said charge and be dealt with as the law directs; that afterwards, and on January 5, 1905, pursuant to the said warrant, the person named in the warrant as Dr. Adams, being, in fact, John W. Alexander, was arrested and arraigned before said defendant, as coroner, for examination upon said charge, whereupon the said Alexander gave bail to appear and answer, and thereafter the examination of said charge against said Alexander was duly pending before said defendant, as coroner; that afterwards, and on January 18, 1905, the said Jackson, being a public officer and a person executing the func-

tions of a public office, to wit, coroner as aforesaid, unlawfully and corruptly did feloniously ask and agree to receive from one Benjamin Reass, the attorney for said Alexander, who had been engaged and employed to represent said Alexander before said coroner, a bribe of $500 upon an agreement and understanding that the official act and proceeding of the said defendant as such coroner should be influenced thereby, and that in consideration thereof he the said Jackson would after the hearing of said charge against said Alexander order that said Alexander should be discharged.

Stated in the simplest terms, therefore, the charge was that defendant as coroner, having had laid before him an information that a person lay dead in New Jersey as the result of a criminal act performed upon her in New York, issued a warrant for the person charged with the commission of the criminal act, and, having held that person to bail pending a hearing, accepted a bribe to discharge him when he should have been heard. The learned recorder stated his reason for arresting the judgment in an elaborate and exhaustive opinion holding in effect that, since the information showed that the dead person had died and her body then lay in the state of New Jersey, the defendant as a coroner of the borough of New York could not officially view the body, and hence never acquired jurisdiction to investigate the cause of death or to cause the arrest of or to hold the person charged with committing the act which resulted in death, and consequently that he could not be convicted of consenting to accept a bribe to do an act in a proceeding in which he had no legal jurisdiction to act at all. Section 72 of the Penal Code provides that:

"A judicial officer, a person who executes any of the functions of a public office not designated in titles six and seven of this Code, or a person employed by or acting for the state, or for any public officer in the business of the state who asks, receives or agrees to receive a bribe, or any money, property or value of any kind or any promise or agreement therefor, upon any agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby, or that he will do or omit any act or proceeding, or in any way neglect or violate any official duty is punishable," etc.

Since the amendment of section 773 of the Code of Criminal Procedure by chapter 321, p. 400, Laws 1887, a coroner in this state when engaged in investigating the killing or wounding of a person performs magisterial functions and acts in a judicial or quasi judicial capacity. The section just quoted therefore clearly applies to the defendant. Assuming for the moment that the defendant had no jurisdiction, upon the information laid before him, to proceed to investigate the cause of death of Marie Smith, or to issue a warrant for the arrest of Adams or Alexander, or when he had been arrested to hold him for examination, still we are unable to agree that, after the warrant had been issued and Adams or Alexander had been arrested and brought before the defendant as coroner and held to bail, the defendant had no legal duty to perform, or that it lies in his mouth to say that, because he had acted unlawfully in causing the arrest of Alexander, he was under no duty to discharge him, and therefore that there was nothing which he could be bribed to do or not to do. When the person charged had been arrested and brought

before the coroner, the latter was confronted at the threshold of the case, as is every judicial officer when a cause is brought before him, with the question whether or not he had jurisdiction to proceed with the cause at all, and his decision upon that question, even if it was that he had no jurisdiction, is clearly an official act. Happily the books contain few precedents dealing with the bribing of judicial officers, but it has been held, as we think properly, in a sister state that an officer prosecuted for accepting a bribe to release a prisoner arrested by him cannot impeach the legality of the arrest as a defense (Moseley v. State, 25 Tex. App. 515, 8 S. W. 652), and certainly the defendant is not to be held acquitted of the charge of bribery because what he agreed to accept a bribe for doing was no more than he was legally bound to do. There are many causes which civil and inferior courts of limited jurisdiction have no jurisdiction to entertain, and nothing is more common in the Municipal Court in the city of New York for instance than for a question to be raised as to the court's jurisdiction to proceed with a cause. When such a question is raised, it .at once becomes the official, judicial duty of the justice to pass upon it and to decide it, and in so doing, although he determines that he has no jurisdiction, he is certainly performing an official and judicial function, and, if he should accept a bribe to influence his decision upon that question, even to decide it rightly, he would certainly be guilty of bribery. State v. Ellis, 33 N. J. Law, 102, 97 Am. Dec. 707. We consider it therefore quite beside the point to consider at length the question whether or not the defendant had jurisdiction in the first place to institute the inquiry he undertook to institute, or to issue the warrant which resulted in bringing Alexander before him. It is sufficient that he had asserted jurisdiction and had assumed to act by color of his office, and that he accepted a bribe to influence his action under such asserted and assumed right to act in the matter. We have not failed to examine the many authorities cited by the learned recorder and those to which our attention has been called by counsel for the respondent, including the recent cases in Missouri which have attracted widespread attention. State v. Meysenburg, 171 Mo. 1, 71 S. W. 229; State v. Butler, 178 Mo. 272, 77 S. W. 560. No useful purpose would be served by discussing and distinguishing in detail all these cases. In most of them . the facts differed widely from those in the present case, and in some the phraseology of the statute involved differed substantially from that of the statute which controls our decision. If any of them are properly speaking contrary to the views herein expressed, it is sufficient to say that they are not controlling upon us, and that we cannot accede to their reasoning.

We have considered the appeal thus far upon the assumption that the jurisdiction of a coroner to investigate a case of wounding or killing and to issue a warrant for the arrest of the person charged with the crime accrued only after he had·viewed the body of the person upon whom the crime was committed. We do not desire, however, to be understood as acquiescing in that view of the correctness of which, in the present state of the law, we have grave doubt. Chapter 321, p. 400, Laws 1887, amending the section of

the Code of Criminal Procedure defining the duties and powers of coroners, largely increased their powers and conferred upon them in cases of homicide and dangerous wounding magisterial jurisdiction. They are no longer required to await the verdict of a jury before issuing a warrant for the arrest of a person probably chargeable with the crime, but may do so whenever sworn information is laid before them showing that there is probable cause to believe that a particular person is so chargeable. Their warrants are no longer, as formerly, returnable before a magistrate, but before one of the coroners, and a coroner is given the same power, formerly confided only to a magistrate, to examine the charge against the prisoner, and to hold him to answer or to discharge him (Code Cr. Proc. §§ 773, 781, 783), and it seems that the proceeding may at least be initiated by the issue of the coroner's warrant, and even the arrest of the person charged before the body has been viewed. In determining whether the evidence laid before him is sufficient to require the issuance of a warrant, as well as in conducting the examination of the charge against the person accused, the coroner now acts judicially. The defendant as coroner had therefore general jurisdiction to inquire into the guilt of a person charged with having committed a criminal homicide in the borough of Manhattan. His jurisdiction in the particular case of the killing of Marie Smith depended upon the facts which might be brought before him for his determination as to whether or not he had authority to proceed with the examination of the accused, and that question was one for his judicial decision. Roderigas v. E. R. Savings Bank, 63 N. Y. 460, 20 Am. Rep. 555; Lange v. Benedict, 73 N. Y. 12–30, 29 Am. Rep. 80. Even if, upon the conceded state of facts laid before him when he issued the warrant for the arrest of Alexander, the case was one in which he should not have assumed to act, yet, because he had power generally to act in cases of homicide or dangerous wounding, it cannot be said that he acted without his jurisdiction, but merely that he erred in his judgment of the legal effect of the facts laid before him, and thus committed a judicial error. Hammond v. Howell, Recorder of London, 2 Mod. 218. In instituting an inquiry into Alexander's criminal responsibility for the death of Marie Smith, the defendant was not acting outside of his jurisdiction, although he may have acted in excess of his authority. Lange v. Benedict, supra. We are therefore of the opinion that the indictment was sufficient, first, because the defendant cannot be heard to say that the arrest of Alexander was illegal, and hence that the charge of bribery could not be predicated upon an agreement to release him; and, secondly, because the defendant, as coroner, had general authority to issue a warrant before actually viewing the body, and hence acted judicially in issuing the warrant for the arrest of Alexander, and cannot be heard now to say that he acted erroneously in so doing. It is sufficient that he undertook to act by color of his office, and fulfillment of his general powers, that he was called upon to decide whether the warrant should issue and the accused should be held or discharged, and that he agreed to accept a bribe to influence that decision.

It follows that the order granting the motion in arrest of judg-

ment should be reversed, and the cause remitted to the Court of General Sessions, with directions to proceed according to law and to render such judgment as said court may be advised. All concur.